HOLDAWAY, Judge, filed the opinion of the Court. KRAMER, Chief Judge, concurring in part and dissenting in part as to dismissal.
*50 HOLDAWAY, Judge:
The appellant, Garrett V. Hayre, appeals from a June 1995 decision of the Board of Veterans’ Appeals (BVA or Board) which determined that clear and unmistakable error (CUE) did not exist in a November 1972 VA regional office (VARO) decision. In December 1997, this Court affirmed the Board’s decision. On appeal, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) affirmed the Court’s decision that the November 1972 VARO decision did not contain CUE, but remanded the matter to determine whether the VARO breached its “duty to assist” in 1972 by failing to obtain certain requested service medical records (SMRs) that had not been previously obtained. Hayre v. West, 188 F.3d 1327 (Fed.Cir.1999). This issue stemmed from a 1972 VARO adjudication as to which a Notice of Disagreement (NOD) was filed in 1973, a Statement of the Case (SOC) was issued, but the appellant, for whatever reason, failed to properly press his appeal. The Federal Circuit held that if the VARO “breached the duty to assist in 1972, then the 1972 decision [wa]s not final for the purposes of direct appeal” and therefore, the appellant’s claim would still be open and unadjudicated. Id. at 1335. The Federal Circuit directed this Court, if we found such a violation, to remand the case to the Secretary for further adjudication on the theory that the 1972 case remained open, notwithstanding its finality under relevant statutory law.
In April 2000, this Court ordered additional briefings on, inter alia, a troubling issue of jurisdiction that the Federal Circuit had not addressed in its disposition of the case. In sum, the Court asked the parties to address the following three questions: (1) Does this Court have jurisdiction over the issue remanded by the Federal Circuit?; (2) Was the Secretary required to provide assistance to the appellant in 1972?; and if so (3) Did the Secretary fulfill his duty to assist? In response, the parties agreed that the Court had jurisdiction over this matter, that the Secretary was required to provide assistance to the appellant in 1972, and that the Secretary had breached that duty to assist. Thus, the parties, both quoting the Federal Circuit’s opinion, asserted that the Court should “remand the case to permit the [Secretary] the opportunity to fulfill the duty to assist and to review the case to determine whether the additional evidence, together with the evidence that was previously of record, supports the allowance of benefits sought on appeal.” Id.
Although, the Secretary “conceded” jurisdiction, and requested a remand, he appeared troubled by the same sort of jurisdictional problems which presently concern this Court. In his view, the Federal Circuit’s opinion, at least implicitly, found jurisdiction for its decision, and therefore, this Court must comply with the Federal Circuit’s mandate. However, jurisdiction is a matter that cannot be so easily “finessed.” This Court must affirmatively satisfy itself that it has authority to act. See Insurance Corp. of Ireland, Ltd., et al., v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (Citing Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) (holding that a court must deny jurisdiction “in all cases where such jurisdiction does not affirmatively appear in the record”)). We cannot accept jurisdiction simply because the parties conceded it. See e.g. Grantham v. Brown, 114 F.3d 1156, 1158 (Fed.Cir.1997); see also Insurance Corp. of Ireland, Ltd., et al., supra; California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (noting that “parties may not confer jurisdiction ... *51 upon th[e] ... Court by stipulation”). Jurisdiction must derive exclusively from a clear and unambiguous act of Congress. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting Sheldon v. Sill, 8 How. 441, 12 L.Ed. 1147 (1850) (“Courts created by statute can have no jurisdiction but such as the statute confers.”)); see also Prenzler v. Derwinski, 928 F.2d 392 (Fed.Cir.1991); Archbold v. Brown, 9 Vet.App. 124, 130 (1996). Jurisdiction may not be “assumed,” “conceded,” or “implied,” and cannot be bestowed on a court by the court itself, or any other court. Moreover, the act of Congress bestowing jurisdiction must be strictly construed. See Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934); United States ex rel. McKenzie v. BellSouth Telecommunications, Inc., 123 F.3d 935, 940 (6th Cir.1997); United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548 (10th Cir.1992), cert. denied, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993); Livingston v. Derwinski, 959 F.2d 224, 225 (Fed.Cir.1992) (holding that the Federal Circuit’s “jurisdictional scheme must be strictly construed in harmony with [its] Congressional mandate” and that it could not “extend [its] jurisdiction where none exist[ed]” (citing both Chemical Eng’g Corp. v. Mario, Inc., 754 F.2d 331, 333 (Fed.Cir.1984) and Christianson, supra )); F & S Construction Company, Inc. v. Jensen, 337 F.2d 160, 161 (1964); Aetna Ins. Co. v. Chicago, R.I. & P.R.R., 229 F.2d 584 (10th Cir., 1956);. Therefore, we say with the greatest respect to the Federal Circuit, that the mere fact that the Federal Circuit assumed jurisdiction over the 1972 adjudication without articulating a jurisdictional basis for doing so is not dispositive as to this Court.
If this Court cannot honestly articulate a persuasive and plausible rationale for jurisdiction, then we have no choice but to say so candidly, and rule accordingly. See Grantham, supra. Contrary to the apparent position of the Secretary, the mandate of the Federal Circuit in this case does not preclude consideration of the jurisdictional issue. Implicit in the consideration of any issue is the always inherent question of jurisdiction over that issue. This is particularly true in this case where neither the jurisdictional issue nor the issue of the so-called “finality” of the 1972 adjudicative determination was ever raised before either the BVA or this Court. The sole issue before the BVA and this Court on our initial review was whether there was CUE in the 1972 adjudication. The finality of the 1972 adjudication was never an issue which was raised before the BVA or this Court. The Federal Circuit affirmed this Court as to the CUE claim, a claim which we note necessarily assumes the finality of the adjudication being collaterally attacked.
Before turning to the specifics of this case, it may be helpful to review the jurisdictional prerequisites that apply to this Court. The first requirement is that this Court may only review final decisions of the BVA. See Veterans’ Judicial Review Act, Pub.L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; see also 38 U.S.C. §§ 7105, 7252(a), and 7266(a); see also Ledford v. West, 136 F.3d 776 (Fed.Cir.1998); Archbold, supra; Manio v. Derwinski, 1 Vet.App. 140, 144 (1991). We have no authority to review RO adjudicative determinations. Id. Moreover, the claim (or issue) that has been reviewed by the BVA must have been the subject of an NOD as to the underlying RO adjudication that was filed on or after November 18, 1988, see VJRA § 402; see also Barrera v. Gober, 122 F.3d 1030, 1031 (Fed.Cir.1997); Archbold, supra, and *52 that NOD must have been filed within one year of the adjudicative determination that the claimant disagrees with. See VJRA § 402; 38 U.S.C. §§ 7105(b)(1) and (b)(2); 38 C.F.R. § 20.302(a); see also Ledford, supra.
Turning now to the case, the appellant filed a timely NOD in 1973 as to the 1972 adjudicative determination, but did not pursue his appeal after the SOC was submitted. That is the only NOD that was ever filed with respect to the 1972 adjudication. The appellant points to an NOD filed in 1993, where he was attempting to show CUE as to the 1972 adjudication. However, this NOD was filed in response to a December 1992 decision on an entirely separate claim. In effect, the appellant wishes his 1993 NOD to serve a dual purpose: as an explicit NOD to its underlying adjudicative determination, and also as an implicit NOD to an earlier adjudicative determination (the 1972 decision for which an NOD had, in any event, already been filed).
The problems with this argument are these: (1) the 1993 NOD was filed nineteen years after the one-year statutory and regulatory requirements for filing an NOD; and (2) even asserting a theory of estoppel that would, nunc pro tunc, reach back and toll the statutory time limit for filing an NOD, this Court cannot ignore the fact that the 1993 NOD was submitted in response to a rating decision for an entirely separate claim, filed in September 1992, which claim in no way, explicitly or implicitly, purported to challenge the “issue of the finality” of the 1972 adjudication.
To base this Court’s jurisdiction over the 1972 adjudication on the 1993 NOD would be in direct violation of other Federal Circuit decisions that have interrupted this Court’s jurisdiction. In Ledford, supra, the Federal Circuit observed that this Court’s jurisdiction “is premised on and defined by the Board’s decision.” See Ledford, 136 F.3d at 779. When the Board has not rendered a decision on a particular issue the Court has no jurisdiction. In the same case, the Federal Circuit held that for this Court to have jurisdiction, the NOD must have been filed after November 18, 1988, and that the NOD must relate to a specific adjudicative determination on a specific date. Id., see also Howard v. Gober, 220 F.3d 1341 (Fed.Cir.2000).
Even if the 1993 NOD were to be interpreted as a “Collaro" type statement that “cut the rough stone” of the 1973 NOD, and thus perfected it, we would still be unable to assert jurisdiction because the “perfected” 1973 NOD would not have been filed on or after November 18, 1988. See VJRA § 402; Collaro v. West, 136 F.3d 1304 (Fed.Cir.1998); Ledford, supra.
The Court notes the dissenting statement by the Chief Judge, and will briefly respond to it. First, it needs to be said that in this case the Federal Circuit never articulated a theory of its purported jurisdiction over the 1972 adjudication, even though its action was clearly premised on the fact that it considered the 1972 adjudication still open and “adjudicable” because of a “grave procedural error.” The NOD conundrum as it relates to the 1972 adjudication was apparently never presented to them, else they would have, no doubt, included an analysis of it in their opinion. Our colleague therefore attempts to defend the Federal Circuit’s jurisdiction by, first of all, refuting the very basis of them opinion, i.e., that the 1972 adjudication is still “open.” He acknowledges that there is no jurisdiction over the 1972 adjudication, and then fashions a theory of jurisdiction which might as well be termed as “What the Federal Circuit might have said had it been presented with the problem *53 and articulated a theory of jurisdiction.” If we correctly understand his argument, it is, reduced to simple terms, this: While there is no jurisdiction over the 1972 claim, there is jurisdiction over an issue (i.e. an effective date) inherent in and raised by that claim. To concede, on the one hand, that we do not have de jure review authority over the 1972 adjudication, but that, through a ruse, i.e. an NOD to another claim, we nevertheless have some kind of authority to, de facto, “complete” the 1972 adjudication, is sophistry of a very high order. This argument ignores, as it must, the plain and unambiguous language of VJRA § 402, 38 U.S.C. § 7105, and 38 C.F.R. § 20.302 requiring that an NOD must be filed no later than one year after the adjudicative determination. Therefore, even if the 1992 NOD (which related exclusively to CUE as to the 1972 adjudication) could somehow be construed as reviving an issue brought by the 1972 claim, it was filed nineteen years too late.
In any event, the appellant filed an NOD in 1973. Taking Chief Judge Kramer’s theory of jurisdiction to its logical (or illogical) conclusion, there would literally be no pre 1988 adjudications over which we could not have jurisdiction. All one would have to do is ferret out a “grave procedural error,” whatever that is, and presto, the adjudication is given new life notwithstanding the fact that it is an adjudication over which, as our colleague admits, this Court has no jurisdiction.
In fairness to the Chief Judge, it appears that he is attempting to avoid a confrontation with our hierarchal judicial superiors, and in so doing, has tried valiantly, albeit vainly, to make a silk purse out of a sow’s ear. We are sympathetic with his efforts, as we are very respectful of the court above, and do not relish the position in which we have been placed. We must either pay heed to the Federal Circuit in a situation where they did not articulate jurisdiction, or adhere to the clear and unambiguous judicial enactments of Congress. In good conscience, we cannot do both. Since it is Congress, not the courts, that defines our jurisdiction, we must necessarily defer to them. The interpretation suggested by our colleague, which we emphasize is not the position of the Federal Circuit, would pervert the clear meaning of the statute and regulation to such an extent as to render them both meaningless. A worse case of judicial usurpation can scarcely be imagined. While the Chief Judge cites to Woods and Tablazón for the proposition that this Court’s precedents require us now to assume jurisdiction over pre-VJRA claims which lack timely post-VJRA NODs, those decisions were, at least in their assumptions as to the issue of jurisdiction, much like the Federal Circuit’s decision in Hayre, supra., i.e., decisions which neither articulated a basis for jurisdiction over the case on appeal, nor considered the Con-gressionally mandated limits to our appellate review authority. Such unarticulated assumptions as to jurisdiction cannot be treated as precedent. There simply is no jurisdictional “holding” in these cases.
In summary, we cannot find, try as we might, a rationale that would permit us ethically, or intellectually, to construct a plausible theory of jurisdiction in this case. We reach this conclusion reluctantly, as it places us in potential conflict with the court that Congress has placed above us for review of legal questions. We respect the Court and its directions to us, and we must comply with those directions where we have the jurisdiction to do so. We also recognize that had the Federal Circuit explicitly articulated a theory of jurisdiction in this case, we would be bound by that interpretation as law of the case even if we personally, as judges, disagreed with its rationale, and even though that interpreta *54 tion would seem to run counter with the plain language of the statute, as well as other precedent from the same court. However, there is no such interpretation in this ease, and we cannot accept jurisdiction in face of the plain language of our jurisdictional statutes that, in our view, preclude jurisdiction, as well as other cases cited above from the Federal Circuit that lead to the same conclusion. The case is DISMISSED.