# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1406

Kenneth B. Mason, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued April 27, 2006                    Decided    August 16, 2006  )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Ralph G. Davis*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before LANCE, DAVIS, and SCHOELEN, *Judges*.

LANCE, *Judge*:  The appellant, attorney Kenneth B. Mason, appeals through counsel a June 21, 2004, decision of the Board of Veterans' Appeals (Board) that determined that the "fee specified in the fee agreement between [the appellant-attorney] and the veteran is excessive and unreasonable in that it includes both an [Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)] award plus a contingency fee for work performed before the Court, Board and VA on the same claim."  Record (R.) at 4.  On appeal to the Board was the appellant-attorney's eligibility to receive directly from VA payment of the 20% contingency fee specified in his fee agreement with the veteran, where VA had mistakenly released 100% of the past-due benefits award to the veteran.  The Board concluded that although the appellant-attorney was eligible for direct payment of 20% of the past-due benefits awarded to the veteran, because the appellant-attorney was required to offset that fee against the EAJA fees that he had already received, he was not "entitled" to the claimed 20% "because to receive such additional benefits would render his attorney fees excessive and unreasonable."  R. at 10.  The court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the

Court will affirm the June 2004 Board decision.

## I. FACTS

In October 1995, the Board, inter alia, awarded the veteran, John L. Simmons, a 50% disability rating for psychophysiological gastrointestinal reaction with depression, cholecystectomy, and a hiatal hernia with reflux. R. at 17-30. The veteran disagreed with the 50% disability rating and filed a timely Notice of Appeal to this Court. On February 21, 1996, the veteran entered into a legal representation agreement with the appellant-attorney, Kenneth Mason. R. at 35-38. With regard to what legal services the appellant-attorney was retained to provide, the fee agreement provided, in pertinent part:

> 1. Legal Services to be Provided. I hereby retain you to represent me in the [U.S. Court of Appeals for Veterans Claims] in an appeal from a decision by the [Board], before the [Board] and before the Department of Veterans Affairs (DVA) Regional Office, as may be necessary in your judgment, for award, or increase of award, of veterans benefits either by appeal, by reconsideration, by reopened claim based on new and material evidence[,] by any other way on all issues stated or inferred in all decisions prior to the date hereof.

R. at 35. As to the agreed-upon fee to be earned by the attorney for the above-mentioned representation, the agreement provided in pertinent part:

> 3. Contingency Fee Arrangement. If there is NO recovery of veterans benefits, there shall be no fee owed by me to you for representation in this matter.
>
> If there IS RECOVERY, I agree to pay you a fee contingent upon the outcome of the matter or proceeding described in paragraph 1. I agree to pay you twenty percent (20%) of the gross amount of any past due VA disability benefits recovered, whether by judgment, settlement or administrative action.
>
> 4. Equal Access to Justice Act Fee. If there is an award of attorney fees under the Equal Access to Justice Act (EAJA), I agree to pay you that part of the EAJA award that, when added to the twenty percent (20%) of the past due disability benefits, raises the total fee earned by you to the following level: The number of hours of time expended on this case multiplied by $400 per hour, which is two times your normal $200 hourly rate for non-contingency work. I agree and acknowledge because of the contingent nature of my case, $400 per hour is a reasonable rate. This ceiling on the fees earned by you is agreed to so that you can undertake this case under circumstances in which you will earn the retainer above if I do not prevail.

2

5.  Lien on Claim and Amounts Recovered.  I HEREBY ORDER AND DIRECT DVA TO WITHHOLD TWENTY PERCENT (20%) OF PAST DUE BENEFITS PAYABLE TO ME AND PAY SUCH AMOUNT TO YOU FOR ATTORNEY FEES.

R. at 35-36 (capitalization and underline emphasis in original).  In March 1996, the appellant-attorney filed a copy of the fee agreement with the Court as required by 38 U.S.C. § 7263(c).  R. at 33.  He also filed a copy of the agreement with the Office of the Chairman, Special Legal Assistant, Board of Veterans' Appeals.  R. at 119, 171-72; *see* 38 U.S.C. § 5904(c)(2), 38 C.F.R. § 20.609(g) (2005).  Later that month, the deputy chief counsel for legal affairs of the Board, by direction of the Chairman of the Board, sent a letter to the appellant-attorney acknowledging receipt of the fee agreement.  R. at 171-72.  The letter stated that "[w]e have instructed the [regional office (RO)] to process your fee agreement dated February 21, 1996, for payment of your fee for services before VA from past-due benefits if such an award is made." *Id.*

In December 1996, in the veteran's matter underlying the fee agreement, the Court granted the veteran's and the Secretary's joint motion for remand and vacated that portion of the Board's October 1995 decision that denied an evaluation in excess of 50% for service-connected psychophysiological gastrointestinal reaction with depression, cholecystectomy, and hiatal hernia with reflux.  R. at 52.  The Board subsequently remanded the matter to the RO for additional development.  R at 66-72.  On January 27, 1997, the veteran, through counsel, submitted an EAJA application for attorney fees under 28 U.S.C. § 2412.  In February 1997, the veteran and the Secretary stipulated to settle the EAJA application in the amount of $4,700.  R. at 74-77.  The Court granted the parties' joint motion and dismissed the EAJA application on February 20, 1997.  R. at 73.  Pursuant to the parties' February 1997 stipulation, VA processed the EAJA settlement (R. at 54), and in March 1997, issued a check in the amount of $4,700 payable to the veteran and the appellant-attorney.  R. at 54, 165.

In July 1999, the RO increased the veteran's psychological disability rating, now diagnosed as post-traumatic stress disorder, from 50% to 100% disabling, effective March 27, 1999.  R. at 85-90.  This action resulted in an award of past-due benefits in the amount of $2,307.  R. at 111.  VA paid the entire past-due benefits amount to the veteran without withholding 20% of the award for payment of the attorney's direct-payment contingency fee. *Id.*

In November 1999, the veteran executed a VA Form 21-22 and appointed the American Legion as his representative. R. at 98. Later that month, the appellant-attorney sent a facsimile to the RO indicating that he understood that all retroactive benefits had been released to the veteran without withholding any portion of the retroactive benefit for payment of attorney fees. R. at 101-02. He requested that he be advised of the amount of the award and the amount of the fee that should have been withheld. *Id.* In November 2000, the appellant-attorney also attempted to file a Notice of Disagreement (NOD) on behalf of the veteran as to the July 1999 rating decision. *Id.* However, VA subsequently notified him that it could not honor the NOD because the veteran had authorized a new power of attorney. R. at 116.

A November 1999 VA report of contact indicates that the veteran was informed by telephone that VA had failed to withhold the 20% attorney contingency fee from the July 1999 retroactive benefits payment. R. at 106. The veteran reported that he would contact his attorney about this matter. *Id.* In January 2000, VA sent the veteran a letter again informing him that a retroactive benefits payment of $2,307 was released to him on July 26, 1999, which represented the full amount of benefits payable. VA stated that it should have withheld 20% of the past-due benefits ($461.40) as payment for attorney fees provided for in the veteran's fee agreement. R. at 111. VA requested that the veteran provide information about his action or lack of action in paying his contracted attorney fees. *Id.* Finally, VA informed him that it may be required to make a duplicate payment to the attorney and that if VA was required to make duplicate payment, VA may thereafter seek to recover those funds from the veteran by creating an overpayment in his account. *Id.* In June 2000, The American Legion, on behalf of the veteran, responded to VA and submitted a written statement asserting that "VA failed to duly withhold attorney fees on behalf of the [appellant-attorney]. This is clearly an administrative error on the part of the VA. The VA is, therefore, obligated to correct the error." R. at 145.

In June 2002, the RO determined that although the legal criteria under 38 U.S.C. § 5904 and 38 C.F.R. § 20.609 had been met and the appellant-attorney was entitled to $461.40 in attorney fees under the provisions of the fee agreement, no money would be paid out of VA funds because VA's records showed that in March 1997 the appellant-attorney had already been paid $4,700 in EAJA fees. R. at 182. The appellant-attorney, through counsel, filed an NOD. R. at 185-88. The RO

4

issued a Statement of the Case (SOC), which determined that although the statutory and regulatory criteria were met for direct payment of a contingency fee, VA could not pay the 20% contingency fee because the appellant-attorney already received EAJA fees that exceeded that amount. R. at 192-202. The appellant-attorney perfected his appeal to the Board. R. at 204-07.

In the June 2004 decision on appeal, the Board determined that "the appellant[-attorney] was entitled to a fee, in the amount of 20[%], of the past due benefits, calculated in the amount of $461.40, resulting from the July 1999 award." R. at 4. The Board also concluded that the fee agreement met the criteria for a valid agreement under 38 U.S.C. § 5904(c)(1) and 38 C.F.R. § 20.609(c) (2003). *Id.* Notwithstanding the Board's finding that the criteria for a valid fee agreement had been met, the Board concluded that "[t]he fee specified in the fee agreement between the attorney and the veteran is excessive and unreasonable in that it includes both an EAJA award plus a contingency fee for work performed before the Court, Board and VA on the same claim." *Id.*; *see* 38 U.S.C. §§ 5904(c)(2) (allows Board on own motion or request of either party to order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable), 7263 (providing for Court's review of fee agreements); 38 C.F.R. § 20.609(f),(h) (2005). Relying on our en banc opinion in *Carpenter v. Principi*, 15 Vet.App. 64 (2001), which held that a fee that includes both an EAJA award plus a contingency fee for work performed before the Court, Board, and VA on the same claim, such that the fee is enhanced by an EAJA award, is unreasonable pursuant to 38 U.S.C. §§ 5904, 7263, the Board concluded under the "unique circumstances in this case" that the RO's failure to withhold 20% of the past-due benefits award was "entirely appropriate." R. at 9-10. The Board reasoned that the law "requires an attorney to offset any EAJA award received for services rendered to a claimant before the Court against any other fees received by the attorney with respect to the same claim, regardless of when or how the non-EAJA attorney fees were earned and received." R. at 9 (citing *Carpenter*, *supra*). Hence, the Board concluded the appellant-attorney would have been obligated to offset the EAJA fees ($4,700) he had received against the 20% ($461.40) still owed to him, and because the 20% fee was smaller than the EAJA fee, he was not "entitled" to the claimed 20% "because to receive such additional benefits would render his attorney fees excessive and unreasonable." R. at 10.

5

## II. ANALYSIS

### A. Contentions of the Parties

On appeal, the appellant-attorney requests that the Court reverse the June 2004 decision and instruct the Board to direct VA to pay him his attorney fees in the amount of $461.40. Appellant's Brief (Br.) at 3-8. In support of reversal, he makes three specific assertions of error. First, he asserts that the Board violated 38 U.S.C. § 7104(c) because the Board failed to follow VA General Counsel Precedent Opinion 12-97 (March 26, 1997) [hereinafter G.C. Prec. 12-97]. Br. at 4-5. In that regard he contends that in cases such as this, where the attorney is eligible to receive an EAJA fee and a direct payment contingency fee, the General Counsel has stated that although the attorney is permitted to retain the larger of the two fees, "[t]here is no authority for the Board to take any action, such as offset the amount of the EAJA fees, to ensure that the attorney fulfills his responsibility to refund the smaller fee to the claimant." G.C. Prec. 12-97; *see* Br. at 4-5. Hence, he contends that the Board acted ultra vires when, "under the guise of an excessive and unreasonableness determination," it imposed an offset contrary to the General Counsel's opinion. Br. at 5.

Second, the appellant-attorney asserts that the Board misinterpreted 38 U.S.C. § 5904(d)(2)(A)(i). Br. at 5-6. Upon concluding that there was a valid fee agreement, VA was obligated by statute to pay the appellant-attorney directly out of the veteran's past-due benefits award. *Id.* He maintains that the Board erred when it determined that he was not "entitled" to the claimed 20% of the veteran's past-due benefits award because the Secretary's regulation provides that fees that total no more than 20% of any past-due benefits are presumptively reasonable. Br. at 6-7; *see* 38 C.F.R. § 20.609(f) (2005). Thus, he argues that the Board's reliance on *Carpenter*, *supra*, to conclude that his fees were excessive and unreasonable is misplaced.

Finally, he contends that the Board erred when it failed to follow this Court's decision in *Snyder v. Principi*, 15 Vet.App. 285, 291 (2001), which held that "the Secretary's obligation and the attorney's right do derive from statute [section 5904], which expressly authorizes the Secretary to make payment to the attorney." Br. at 7-8. He argues that his attorney fees were presumptively reasonable under 38 C.F.R. § 20.609(f) and, therefore, once entitlement and eligibility had been determined the Board was required to instruct VA to pay him because the existence of the erroneous payment to the veteran is "immaterial to the Secretary's responsibility to make payment where there

6

is lawful entitlement." *Snyder*, 15 Vet.App. at 292.

In his brief, the Secretary asserts that he "stands on the uncontested facts and confession of error by the Board." Secretary's (Sec'y) Br. at 15. However, because he contends that there is no case or controversy to resolve, he asserts that the Court should dismiss the appeal. *Id*. During oral argument, the Secretary candidly asserted that VA erred in this matter when it failed to directly pay the appellant-attorney his 20% contingency fee out of the veteran's award of past-due benefits. Nonetheless, the Secretary suggests that the Court adopt a "no-harm-no-foul" approach toward this case. He contends that if VA were directed to pay the appellant-attorney, the appellant-attorney would be required under the law to offset the contingency fee against the EAJA fees that he had already collected and, therefore, he would be required to return the lesser amount (the $461.40) to the veteran. However, because the veteran received the $461.40 when VA paid him 100% of the past-due benefits award, VA would be required to create an overpayment in the veteran's account to recoup the funds. Sec'y Br. at 18. The Secretary contends that because both the veteran and the attorney have exactly what they are entitled to under the law there has been no prejudice to either party to the fee agreement, and therefore, it is unnecessary for the Court to order further action. *Id.*

In his reply brief, the appellant-attorney asserts the Secretary improperly assumes that there is an offset obligation and, therefore, the Secretary improperly concludes there has been no harm. Reply Br. at 5. He asserts that it is not at all clear that there remains a pertinent EAJA application because the EAJA application was *dismissed* by the Court and, therefore, there is no "same work" offset required because there has been no payment under the EAJA. *Id.* In the alternative, he argues that even if there is an offset obligation, it is the responsibility of the attorney and not the RO or the Board to assess whether payment under both the EAJA and the contingency fee agreement is for the "same work." Reply Br. at 5-6. Finally, he argues that G.C. Prec. 12-97 clearly held that the Board had no authority to take any action and if the Board intended to delve into the reasonableness of the fee agreement and the attorney's offset obligations, then it should have first given notice under *Bernard v. Brown*, 4 Vet.App. 384 (1993). Reply Br. at 6.

### B. Issue Presented

There is no dispute on appeal that the appellant-attorney is eligible to receive 20% of the past-due benefits award because the Board determined that there is a valid fee agreement under

38 U.S.C. § 5904(c) that also qualifies as a direct-pay fee agreement under 38 U.S.C. § 5904(d)[1]. R. at 4. The question presented is whether the Board's considering and finding unreasonable the fee agreement was appropriate and correct in light of the appellant-attorney's suggestion at oral argument that the Board violated *Bernard*, *supra*. The appellant-attorney contends that the Board should not have considered the reasonableness of the fee agreement since the sole issue on appeal was his eligibility to receive a fee. However, because the Board has original jurisdiction to review the reasonableness of a fee agreement and we conclude the appellant-attorney was not prejudiced by its review in this instance, we must also determine whether the Board's imposition of an offset against EAJA fees received by the appellant-attorney was appropriate under the facts of this case.

## C. Board's Authority To Review Reasonableness of Fee Agreement

Pursuant to section 5904(c)(2) of title 38, U.S. Code, the Board has original jurisdiction to review "upon its own motion, or the request of either party" a fee agreement and "may order a reduction in the fee called for in the agreement if the Board determines that the fee is excessive and unreasonable." 38 U.S.C. § 5904(c)(2); *Scates v. Principi*, 14 Vet.App. 62, 64 (2000) (en banc) (recognizing as a departure from normal claims adjudication process Board's jurisdiction to review reasonableness of fee agreement), *aff'd as modified*, 282 F.3d 1326 (Fed. Cir. 2002); *see also* 38 C.F.R. § 20.610(i) (2005) (setting forth Board's procedure and notice requirements for review of fee agreements). On the other hand, "all issues involving entitlement and eligibility for attorney fees

---

[1] Because there is no dispute on appeal, we will not review the Board's eligibility determination. However, the Court has serious concerns as to whether the provisions of paragraph 4 of the fee agreement, *supra*, violate the limitation in section 5904(d) that the total fee payable to the attorney may not exceed 20% of the total amount of any past-due benefits awarded. The fee agreement clearly contemplates that the attorney receive 20% of past-due benefits *plus* some or all of the EAJA fees awarded by the Court. Although the RO found this to be a qualifying fee agreement under section 5904(d), the eligibility decision does not include any explanation of how it reached this conclusion. *See Hazan v. Gober*, 10 Vet.App. 511, 524 (1997) (provision in fee agreement providing for fixed fee of $2,000 plus a contingent fee of 20% of past-due benefits awarded, to be paid directly by VA, found unenforceable because it conflicts with the terms of section 5904(d)(1) and (2)(a)); *see also In re Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1999) (if attorney charges fee beyond 20% contingency fee to be paid directly by VA, for representation at the Board or VA on the issue successfully appealed to the Court, the amended fee agreement would violate the 20% contingency-fee limitation under section 5904(d)). Hence, nothing in this opinion should be construed as the Court's agreement with VA's eligibility determination.

*under direct-payment contingency-fee agreements*, as contrasted with issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with normal adjudication procedures and cannot be the subject of sua sponte or other original [Board] review." *Id.*; *see also Stanley v. Principi*, 16 Vet.App. 356, 361 (2002) (applying the holding in *Scates* to non-direct-payment fee agreements); *but see Scates*, 282 F.3d at 1367 (stating that "the line between (1) entitlement to and (2) reasonableness and excessiveness of attorney fees may not be as clear and bright as the Veterans Court believed"). We have also held that RO review of a fee agreement for eligibility pursuant to section 5904(c)(1) is a necessary prerequisite to Board review of the agreement for reasonableness under section 5904(c)(2). *See Snyder*, 15 Vet.App. at 296-98.

Section 20.610(i) of title 38, Code of Federal Regulations, sets forth the procedure for the Board's review of a fee agreement for excessiveness or unreasonableness. The Board may review a fee agreement "upon its own motion or upon the motion of any party to the agreement." 38 C.F.R. § 20.610(i).

> Such motions must be in writing and must include the name of the veteran, the name of the claimant or appellant if other than the veteran, and the applicable [VA] file number. Such motions must set forth the reason, or reasons, why the fee called for in the fee agreement is excessive or unreasonable; must be accompanied by all evidence the moving party desires to submit; and must include a signed statement certifying that a copy of the motion and any evidence was sent by first–class mail, postage prepaid, to each other party of the agreement. . . . The other parties may file a response to the motion, with any accompanying evidence, . . . with the Board . . . not later than 30 days following the date of receipt of the copy of the motion.

*Id.*

There is no indication in the record that the Board filed a written motion to review the fee agreement, or that it otherwise provided the parties to the fee agreement with notice that it would be reviewing the fee agreement for reasonableness in addition to its review of the appellant-attorney's eligibility to receive a fee. The Board is not free to ignore the law or VA regulations, and therefore, we hold that the Board erred when it reviewed the fee agreement for reasonableness without providing the notice contemplated by 38 C.F.R. § 20.610(i). *See Schafrath v. Derwinski*, 1 Vet. App. 589, 592 (1991) (Board not free to ignore regulation adopted by VA). However, because we conclude that this procedural error was nonprejudicial, we will not remand the matter to the Board to correct this error.

9

Notwithstanding the apparent lack of notice, there is no doubt that the Board has the authority to make reasonableness determinations pursuant to section 5904(c)(2). Furthermore, contrary to the appellant-attorney's suggestion at oral argument, we do not believe it necessary to require the Board to institute a separate proceeding to address the reasonableness of the fee agreement, when the agreement is already before it on review of an eligibility determination. However, as noted above, the Secretary's regulation sets forth a procedure whereby the parties to the fee agreement are given notice and an opportunity to be heard before the Board addresses the reasonableness of a fee agreement. Although the appellant-attorney does not rely on this regulation to assert error, he did suggest at oral argument and in his reply brief that the Board's failure to provide him with notice that it would be reviewing the reasonableness of the fee agreement violated *Bernard*.

In *Bernard*, we held that when the Board addresses a question not addressed by the RO, it is for the Board to "consider whether the claimant has been given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument . . . , and if not, whether the claimant has been prejudiced thereby." 4 Vet.App. at 394. In the instant case, the Board did not provide notice nor did it conduct the prejudice analysis contemplated in *Bernard.* This was a procedural error. However, because we find the Board's procedural error to be nonprejudicial, we do not believe that a remand is necessary for the Board to provide the appellant-attorney with notice and opportunity to present argument on this issue, or for the Board to address prejudice in the first instance. *See* 38 U.S.C. § 7261(b)(2) (Court is required to "take due account of the rule of prejudicial error"); *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004).

Initially, we note that the June 2002 RO decision that denied the appellant-attorney's request for direct payment of his contingency fee put him on notice that the RO questioned whether he was entitled to collect a fee under section 5904(d) and the EAJA. R. at 182. Although the RO did not address the appellant-attorney's entitlement to payment specifically in terms of reasonableness, it is clear that the attorney's offset obligations guided the RO's determination that VA was not required to pay him additional fees under section 5904, when he had already received payment for his services under the EAJA. R. at 202. In fact, it was on this basis that the appellant-attorney, through counsel, appealed to the Board and argued that the RO impermissibly relied on the appellant-attorney's offset

obligations to avoid paying his fee under section 5904(d). R. at 185-88, 204-07. While the Board couched its determination in terms of reasonableness rather than eligibility, ultimately, as it guided the RO, it was the appellant-attorney's offset obligations that guided the Board's conclusion in this case. Therefore, although the appellant-attorney argued this issue in terms of his eligibility to collect a fee under 5904(d), he certainly was on notice that the terms of the fee agreement regarding his EAJA offset obligations were key to the resolution of the issue and, therefore, he was not unduly prejudiced.[2]

A Board determination under section 5904(c)(2) may be reviewed by this Court pursuant to 38 U.S.C. § 7263(d). The Court reviews Board decisions regarding the reasonableness of a fee agreement de novo. *Carpenter*, 15 Vet.App. at 78. Therefore, a Board finding regarding the excessiveness or reasonableness of the fee agreement is entitled to no deference. *In re Matter of Vernon*, 8 Vet.App. 457, 459 (1996). Accordingly, because there is no deference in our review, the appellant-attorney's arguments are no stronger or weaker here than if they had been considered by the Board in the first instance. Therefore, because we conclude in part II, D, below, that paragraph 4 of the fee agreement is facially unreasonable pursuant to our en banc opinion in *Carpenter*, *supra*, a remand to the Board would be a superfluous exercise adding to an already overburdened system. *Cf. Valiao v. Principi*, 17 Vet. App. 229, 231-32 (2003) (holding that the Board's error concerning the notice requirements of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, was nonprejudicial where the facts were not in dispute, the facts averred could not conceivably lead to a different result, and the Board's decision was reduced to a matter of law); *Mason v. Principi*, 16 Vet. App. 129, 132 (2002) (where "the law as mandated by statute, and not the evidence, is dispositive . . . , the VCAA is not applicable"); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (stating that "strict adherence [to the law] does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case"). Under these circumstances, a remand for compliance with *Bernard* is not necessary. *Cf. Velez v. West*, 11 Vet. App. 148, 157 (1998) ("even if there had been any general violation of . . . any broadly stated

---

[2] We also note that the Board's failure to notify the veteran of its sua sponte review of the reasonableness of the fee agreement was not prejudicial to the veteran because the Board reached a determination that was favorable to the veteran.

'fair process' requirement, such violation would have been nonprejudicial because . . . the . . . . claim . . . . was not well grounded . . . .").

### D. Reasonableness of Fee Agreement

Section 506(c) of the Federal Courts Administration Act (FCAA), Pub.L. No. 102-572, § 506(c), 106 Stat. 4506, 4513 (1992) provides that section 5904(d) shall not preclude an award of fees under the EAJA. However, "where the claimant's attorney receives fees for the *same work* under both section 5904(d) and [the EAJA], the claimant's attorney refunds to the claimant the amount of the smaller fee." *Id.*

This Court has held that fee agreements that do not provide that attorney fees be offset by the amount of an EAJA award for the *same work* are unreasonable. *See Shaw v. Gober*, 10 Vet.App. 498, 505 (1997) (fee agreement unreasonable on its face to the extent that it could be read as precluding an offset where Court remanded claim with direction to Board to award benefits). In determining the reasonableness of a fee agreement that contained a no-offset provision, the Court initially focused on whether the work before the Court and the Board could be considered the "same work." *Compare Shaw, supra*, *with Fritz v. West*, 13 Vet.App. 190, 194 (1999) (not unreasonable to keep contingency fee and EAJA fees if work before the Board after remand results in more relief than received from the Court).

However, in *Carpenter*, the en banc Court was concerned that the interpretation of "same work" in *Shaw* and *Fritz*, both *supra*, was too narrow and left open the opportunity to subvert the very purpose and intent of the EAJA. 15 Vet.App. at 74. In discussing Congress's intent when it passed the EAJA, the Court stated: "The purpose of EAJA is not to provide an attorney a greater fee than contemplated by his fee agreement. 'The policy of [EAJA] is to pay *nonenhanced* fees for legal services actually rendered.'" *Carpenter*, 15 Vet.App. at 75 (quoting *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed.Cir. 1991)). The fee agreement at issue in *Carpenter* carved out an exception that if the claim was remanded by the Court, the attorney's 30% contingency fee would be supplemented by any EAJA fee awarded. The Court held that if it were to consider the work on remand different from the work at the Court, then it would improperly be allowing the EAJA fee to enhance the attorney's fee, rather than to reimburse the veteran for the cost of representation. Hence, the en banc Court concluded that

12

representation of a claimant in pursuit of a claim at all stages of the adjudication process is the "same work" regardless of the tribunal before which it is performed. Therefore, the Court holds that a fee which included both an EAJA award plus a contingency fee for work performed before the Court, Board, and VA on the same claim *such that the fee is enhanced by an EAJA award* is unreasonable pursuant to 38 U.S.C. § 5904(c) and 7263.

*Carpenter*, 15 Vet.App. at 76 (emphasis added). The Court further held: "To the extent the fee agreement here provides that *any portion* of the EAJA award will not be offset against the fee paid, or to be paid, by the veteran to the appellant, the appellant's fee is excessive and unreasonable." *Id.*; *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 34 (2000) ("A lawyer may not charge a fee larger than is reasonable in the circumstances or that is prohibited by law.").

Paragraph 4 of the fee agreement at issue clearly contemplates that the appellant-attorney's fee is to be enhanced by an EAJA award: "If there is an award of attorney fees under the [EAJA], I agree to pay you that part of the EAJA award that, when *added* to the . . . 20% of the past due disability benefits, *raises the total fee* earned by you . . . ." R. at 35-36 (emphasis added). Applying the interpretation of "same work" adopted by the en banc Court in *Carpenter*, we hold that paragraph 4 of the fee agreement is facially unreasonable and unenforceable to the extent it provides that any part of an EAJA award will be *added* to the appellant-attorney's 20% contingency fee. The purpose of awarding EAJA fees to a successful litigant against the Government is to defray the cost of litigation and not to give the appellant-attorney a greater fee. Hence "[a]n artfully or inartfully drafted contingency fee agreement which would circumvent the letter and spirit of EAJA [is] 'patently unreasonable on its face.'" *Carpenter*, 15 Vet.App. at 77. Accordingly, pursuant to 38 U.S.C. § 7263, the Court will affirm the Board's conclusion that the fee agreement is excessive and unreasonable.

### E. Attorney's Obligation To Offset His Contracted Attorney Fees Against Money Paid by VA in Settlement of an EAJA Application

Our conclusion that paragraph 4 of the fee agreement is facially unreasonable does not resolve the underlying issue presented: Whether VA is required to directly pay the appellant-attorney his 20% contingency fee, when he has already collected and retained $4,700 paid in settlement of the veteran's EAJA application? The Board determined that the appellant-attorney must offset the EAJA fees he received against the 20% owed to him. R. at 10. Hence, the Board concluded that

13

because the money owed to him, $461.40, "is quite a bit less than the EAJA award of $4,700 he has already received, the . . . attorney is not "entitled" to the claimed 20[%] of the veteran's past due benefits." *Id.* The appellant-attorney rejects this line of reasoning on two grounds. First, he contends that the Board has no authority to impose an offset, but rather it is his own ethical responsibility to refund any money that he may owe to the veteran. Br. at 4-5; *see* G.C. Prec. 12-97. Second, he contends that it is not at all clear that an offset is required because the EAJA application was dismissed by the Court, and therefore, there was no payment under the EAJA. Reply Br. at 5.

We will address the second contention because if an offset is required, both the veteran and the appellant-attorney already have what they are legally entitled to under the law. Thus, even assuming arguendo the Board erred by injecting itself into the process, neither the veteran nor the appellant-attorney would have been harmed by the Board's action and, therefore, such error would be nonprejudicial. *See* 38 U.S.C. § 7261(b)(2); *Conway*, *supra*.

### 1. Did the Appellant-Attorney Receive Fees Under the EAJA?

Section 506(c) of the FCAA requires an attorney who "receives fees for the same work under both section 5904 of title 38, United States Code, and section 2412 (d) of title 28, United States Code," to refund to the claimant the amount of the smaller fee. *Cf. Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) (recognizing that an attorney who receives fees under the EAJA and the Social Security Act, 42 U.S.C. § 406(b), must refund the smaller fee to the client). In the instant case, the RO and the Board both determined that the appellant-attorney is entitled to receive his fee under section 5904(d), and therefore, there is no dispute on appeal concerning his entitlement under section 5904(d). Additionally, there is no dispute that the appellant-attorney received fees in the amount of $4,700 in March 1997. R. at 54, 165. The question raised by the appellant-attorney is whether the $4,700 he received was under section 2412(d) for purposes of determining that an offset is required? For the reasons that follow, we conclude the $4,700 paid by VA in settlement of the veteran's EAJA application was money received under section 2412(d), and therefore, the appellant-attorney would be required to refund the smaller fee to the veteran.

In January 1997, the veteran, through counsel, submitted an EAJA application for attorney fees under 28 U.S.C. § 2412. In February 1997, the parties stipulated to settle the veteran's EAJA application in the amount of $4,700 (R. at 74-77). The settlement agreement executed by the parties

14

indicated that they agreed to an amicable resolution of the veteran's claim for reasonable attorney fees under section 2412(d). *Id.* The parties filed a joint motion to dismiss the EAJA application, citing as authority *Dofflemyer v. Brown*, 4 Vet.App. 339 (1993), for the proposition that their agreement rendered moot the only issue pending before the Court, and therefore, without a case or controversy to resolve, dismissal was appropriate. The Court granted the parties' joint motion to dismiss on February 20, 1997. R. at 73. VA processed the EAJA settlement and pursuant to their agreement issued a check in the amount of $4,700. R. at 54, 165.

The purpose of the EAJA is to provide claimants with the financial means to challenge unjustified governmental action, which they would otherwise not have. *See Abbs v. Principi*, 237 F.3d 1342, 1347 (Fed. Cir. 2001). In light of the EAJA's intended purpose, we have held that "the law gives the EAJA cause of action and standing to the client, not the attorney, and the attorney cannot amend the law by bestowing such standing on the attorney." *Carpenter*, 15 Vet.App. at 75 (quoting *Shaw*, 10 Vet.App. at 506). Because the purpose of the EAJA is to reimburse the veteran for the cost of litigation, we will not adopt the appellant-attorney's suggestion that payment of litigation fees in settlement of an EAJA application is not "receipt" of a fee under the EAJA that must be offset against fees received under section 5904(d). To hold otherwise would contravene the intent and purpose of the EAJA. Hence, we will not construe the FCAA to require a Court "award" of EAJA fees, when the parties' settlement of the EAJA application divests this Court of jurisdiction to act over the application. *See Massey v. Brown*, 9 Vet. App. 134, 136 (1996); *Dofflemyer*, *supra*. Accordingly, we find that the appellant-attorney "received" fees in the amount of $4,700 under section 2412(d). *Cf. In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 87 (1999) (noting that any contingency fee collected must be offset against any EAJA fees already received under Court's order granting parties' joint motion to dismiss EAJA application).

Furthermore, the Court notes that if the $4,700 paid to the appellant-attorney is not money received under the EAJA, then there is no contract in the record that would have authorized him to retain that money. The law is well established that EAJA litigation is controlled by the client and EAJA awards are the property of the litigant, not the attorney. *See Carpenter*, *supra*. Here, the terms of the original contract do not authorize the appellant-attorney to retain the "settlement" money if it was not money received under the EAJA. *See* R. at 35-38. In this regard, neither the settlement

15

agreement nor any other document identified in the record constitutes an amended contract, supported by consideration from the attorney to the veteran, to pay the attorney EAJA settlement money. Therefore, if we were to accept the argument that there was no payment under the EAJA, we would have to conclude that the appellant-attorney owes the veteran $4,239.60, the difference between the EAJA settlement money and his 20% contingency fee. In which case, he is currently in possession of more money than he should have under the contract.

Therefore, because we conclude that the appellant-attorney has received fees under the EAJA, section 506(c) of the FCAA would require that he refund the smaller of the two fees to the veteran. However, in this case, the veteran has already received that money when VA mistakenly paid to him 100% of the past-due benefits award.

### 2. Applicability of VA General Counsel Precedent Opinion 12-97

The appellant-attorney argues, in the alternative, that even if an offset is required the Board violated 38 U.S.C. § 7104(c) when it failed to follow G.C. Prec. 12-97. Br. at 4-5; Reply Br. at 5. He asserts that the General Counsel stated in cases such as this that the Board has no authority to take any action to ensure that an attorney fulfills his ethical responsibility to refund the smaller fee to the claimant. G.C. Prec. 12-97. First, we note that, although the Board is bound by the precedent opinions of the VA General Counsel, this Court is not so bound. *See Hatch v. Principi*, 18 Vet.App. 527, 531 (2004) (citing *Theiss v. Principi*, 18 Vet.App. 204, 210 (2004), *Cottle v. Principi*, 14 Vet.App. 329, 335 (2001), and *Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994)).

More importantly, we cannot agree with the appellant-attorney's assertion that the circumstances presented in his case were addressed in the General Counsel's opinion. The General Counsel's opinion relies on section 506(c) of the FCAA and applies to situations where the attorney is lawfully eligible to receive attorney fees under both the EAJA and section 5904(d). However, the General Counsel's opinion is premised on there being a lawful fee agreement. The General Counsel's opinion does not address the situation presented here, i.e., an unreasonable fee agreement that expressly conflicts with section 506(c) because of its provision that the attorney's section 5904(d) fee will be enhanced by EAJA fees. Because the General Counsel opinion does not contemplate an unreasonable and unenforceable fee agreement, we do not find it to limit or restrict the Board's ability to impose an offset obligation under the facts presented here.

16

### 3. Applicability of the Rule of Prejudicial Error

Even assuming that the Board lacked the authority to impose an offset, the Court is required to take due account of the rule of prejudicial error. *See* 38 U.S.C. § 7261(b)(2). Section 506(c) of the FCAA and our prior caselaw establish a well-defined policy against permitting an attorney to double-dip by collecting a fee for the same work under section 5904(d) and the EAJA. Hence, while the law permits the attorney to retain the greater of the two fees, he may not retain both fees. There is no dispute that the appellant-attorney has already collected and retained the greater of the two fees. Nor is there any question that the veteran, albeit mistakenly, has already received 100% of the past-due benefits award.

Therefore, based on our finding that the appellant-attorney's receipt of the $4,700 fee was under the EAJA, compliance with section 506(c) of the FCAA would have required the appellant-attorney to refund the 20% direct-pay contingency fee received under section 5904(d) to the veteran. However, under the facts of this case, the veteran already received these funds when VA mistakenly released the entire past-due benefits award to the veteran in 1999. R. at 111. Accordingly, both the appellant-attorney and the veteran have precisely what they are entitled to under the law, and therefore, we conclude that neither party to the fee agreement has been prejudiced by the Board's imposition of an offset.

We are mindful of our decisions in *Cox v. Principi*, 15 Vet.App. 280 (2001), and *Snyder*, *supra*, which obligate VA to directly pay an attorney a 20% direct-payment contingency fee if the fee agreement meets the statutory and regulatory criteria, regardless of VA's erroneous payment of that fee to the claimant. *See Snyder*, 15 Vet.App. at 292; *Cox,* 15 Vet.App. at 282-83. However, under the circumstances of this case, where the appellant-attorney would otherwise be obligated to refund the contingency fee to the veteran, the Court will not require a blinding adherence to the law, with absolutely no benefit flowing to the appellant-attorney. *See* 38 U.S.C. § 7261(b)(2); *see also Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (holding that, "[i]n the absence of demonstrated prejudice," remand unnecessary); *Parker v. Brown*, 9 Vet.App. 476, 481 (1996) (same). To be clear, by this opinion we do not seek to condone or reward VA for its repeated procedural failures in this case. Nevertheless, in the absence of any demonstrated prejudice, we will not require the Secretary to make any further payment under section 5904(d), when to do so would contravene our established

17

policy against an attorney's receipt of two fees for the same work. *See Carpenter*, *Fritz*, and *Shaw*, all *supra*.

### III.  CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, the June 21, 2004, Board decision is AFFIRMED.